IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EARL THOMAS MORRIS, JR., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. SAG-20-256 |
| BALTIMORE COUNTY DETENTION CENTER, | * | |
| GAIL WATTS, and | * | |
| OFFICER CHARLES E. BROWN, III,[1] | | |
| | * | |
| Defendants. | | |
| | * | |

***

## MEMORANDUM OPINION

Self-represented Plaintiff Earl Thomas Morris, Jr., an inmate presently incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, filed this action claiming that Officer Charles E. Brown, III, a correctional officer at the Baltimore County Detention Center ("BCDC"), assaulted him following a verbal exchange on May 13, 2019. ECF No. 1. On June 11, 2020, Defendants BCDC, Officer Brown, and Director Gail Watts filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 15. Plaintiff requested an extension of time in which to respond to Defendants' Motion and was granted until September 30, 2020 to do so, *see* ECF Nos. 19, 20, but has filed no substantive response. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons explained below, Defendants' Motion will be granted.

---

[1] Plaintiff named the "Warden of Baltimore County Detention Center" as a Defendant, and defense counsel identified that individual as Director Gail Watts. Additionally, the Defendant named "Officer C. Brown," who was identified by defense counsel as Officer Charles E. Brown, III. The Clerk shall update the docket to reflect these changes.

**Background**

Plaintiff claims that on May 13, 2019, he was called for processing to be transported to the courthouse between 6 and 6:45 a.m. ECF No. 1 at 3. While in the holding cell, Plaintiff told Defendant Brown that he had not received his morning medication. *Id.*, ECF No. 15-2 at ¶ 11. When he had not received his medication 30 to 45 minutes later, Plaintiff made the same request to other officers and a sheriff and was told he would have to wait until he returned from the courthouse. ECF No. 1 at 3. Plaintiff asserts that when he returned from the courthouse between 1 and 1:30 p.m., his request to receive his medication was ignored again. *Id.* While he was in the holding cell, Defendant Brown passed by and Plaintiff asked him why he had not assisted Plaintiff that morning and whether he could help him get his medication. *Id.* Plaintiff claims Defendant Brown "walked off" without responding to his request. *Id.* Around 2:30 p.m., Plaintiff spoke to Sergeant Chatmon about not receiving his morning medication. *Id.* at 4. Sergeant Chatmon informed Plaintiff that he would contact the medical department and that Plaintiff should check in before being moved from the holding cell. *Id.*

When Defendant Brown returned, Plaintiff asked him again why he had not assisted Plaintiff in getting his medication. *Id.* Defendant Brown responded, "Because I'm not a nurse." *Id.* Defendant Brown opened the holding cell, and Plaintiff requested to speak to Sergeant Chatmon. *Id.* While doing so, Defendant Brown directed other inmates towards an elevator. *Id.*, ECF No. 15-2 at ¶¶ 9, 14. After speaking to Sergeant Chatmon, Plaintiff proceeded towards Defendant Brown where, upon passing through the hallway gate, Defendant Brown asked the last person through to close the gate. ECF No. 1 at 5, ECF No. 15-2 at ¶¶ 15-16. When he did not hear the gate close, Defendant Brown asked Plaintiff, who was last in line, to close the gate. ECF No. 15-2 at ¶ 18. Plaintiff refused, also stating, "You C/O's think you tough. I don't mind smacking the shit out of

C/O." ECF No. 15-2 at ¶ 23. Defendant Brown told Plaintiff to return to the holding cell. ECF No. 1 at 5, ECF No. 15-2 at ¶¶ 22-23. Defendant Brown directed the other inmates back to the processing area, where Defendant Brown states Plaintiff referenced smacking him again. ECF No. 15-2 at ¶ 25. Plaintiff walked back through the gate, at which time Plaintiff states Defendant Brown said, "You think you tuff? [sic] Whats [sic] up then Bitch?" ECF No. 1 at 5. Defendant asserts Plaintiff stopped walking and stated, "I'm about this close to smacking the shit out of you." ECF 15-2 at ¶ 27. Plaintiff alleges that he turned towards Defendant Brown, dropped his bag, and put his hands down by his sides in fear that he would be struck from behind and to signal that he was not trying to fight. ECF No. 1 at 5. However, Defendant Brown asserts in his sworn declaration that Plaintiff positioned his body in a staggered stance. ECF No. 15-2 at ¶ 29. Defendant Brown believed that Plaintiff was considering hitting him and that Plaintiff moved his right arm to do so. *Id.* at ¶ 30. Defendant Brown then struck Plaintiff twice in the face with his fist, causing Plaintiff to fall and become unconscious, according to Plaintiff. ECF No. 1 at 5-6, ECF No. 15-2 at ¶¶ 32-33.

Upon regaining consciousness, Plaintiff alleges that Defendant Brown was on top of Plaintiff applying pressure to his jaw, while two other officers held down Plaintiff's arms. ECF No. 1 at 6, ECF No. 15-2 at ¶ 33. While Plaintiff was on the ground, Defendant Brown allegedly called Plaintiff a "big bitch" and "big black ugly bitch," and said he was "big for nothing." ECF No. 1 at 6. Plaintiff then heard Sergeant Chatmon instruct him to turn over and ordered Defendant Brown to get off Plaintiff so that he could comply. *Id.*, ECF No. 15-2 at ¶ 37. Plaintiff was then taken to the nurse's office. ECF No. 1 at 6. Plaintiff reported that his jaw, neck, back and shoulder were in pain. *Id.* Thereafter, Plaintiff was taken to the Restricted Housing Unit. *Id.* at 7.

On May 16, 2019, a disciplinary hearing was held at which Plaintiff was found guilty of interfering with correctional staff, threatening bodily harm, and curse or abuse of a correctional officer. *Id.* at 7, ECF No. 15-1 at 3, *see* ECF No. 15-3 at 2. He was sentenced to 20 days of restrictive housing. ECF No. 1 at 7, ECF No. 15-3 at 2. Plaintiff seeks monetary compensation for the mental and physical pain he suffered. *Id.* at 14.

## Standard of Review and Evidentiary Record

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v.*

*Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Plaintiff was on notice that the court could treat the Motion as one for summary judgment and rule on that basis. Accordingly, the court will review Plaintiff's claims against Defendants under the Rule 56(a) standard.

Defendants have attached to their Motion evidence including the Department of Corrections incident report, ECF No. 15-3, the Baltimore County Police Department Internal

Affairs investigative report, ECF No. 15-4, and an affidavit from Defendant Brown, ECF No. 15-2. In contrast, Plaintiff did not submit an opposition to Defendants' Motion, relying solely on his unverified Complaint. ECF No. 1. Because Plaintiff's Complaint is not verified, its factual assertions may not be considered in opposition to Defendants' Motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants, because the plaintiff could not "create a genuine dispute of material fact 'through mere speculation,'" and "[t]hus, the Court [wa]s left with a record that [wa]s bereft of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769, F.2d 213, 214 (4th Cir. 1985)).

## Discussion

### I. Defendant BCDC

Plaintiff names Defendant BCDC in this matter in name only, and does not include any allegations against the facility. As a preliminary matter, because BCDC is not a "person" subject to suit under 42 U.S.C. § 1983[2], Plaintiff's claims against it must be dismissed. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978) (noting that for purposes of § 1983 a "person" includes individuals and "bodies politic and corporate"); *see generally* 5 Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 1230 (2002). A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery

---

[2] That section states: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. §1983 (emphasis supplied).

6

County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983"); *Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) (stating that "the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983"); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Conduct amenable to suit under 42 U.S.C. § 1983 must be conduct undertaken by a person, and BCDC is not a person within the meaning of the statute.

## II.     Defendant Director Gail Watts

Plaintiff's only claim against Defendant Watts is that on June 28, 2019, Plaintiff wrote to her regarding the alleged verbal and physical assault by Defendant Brown, which resulted in his placement in the Restrictive Housing Unit. ECF No. 1 at 8. He requested to speak to her in person, but never received a response. *Id.* at 9. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Here, Plaintiff neither alleges any constitutional violation by Defendant Watts, nor alleges her personal participation in the event with Defendant Brown. As such, the complaint will be dismissed as to Defendant Watts.

## III.    Defendant Charles E. Brown, III

Defendant Brown asserts that the force used during the incident was reasonable for the purpose of protecting his physical safety and restoring order. *See* ECF No. 15-1 at 14-15. "[E]xcessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." *Riley v. Dorton,* 115 F.3d 1159, 1166 (4th Cir.1997) (en banc). To successfully state a claim of excessive force in violation of his Fourteenth Amendment rights as a pre-trial detainee, Plaintiff may propound evidence that "the use of force is deliberate – *i.e.*,

purposeful or knowing." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). Plaintiff's claim need not detail his alleged assailant's subjective state of mind, because "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97, *see also Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" *Kinglsey*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This Court is obliged to "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.* at 397.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

Here, the facts are not subject to dispute, as Plaintiff has not submitted any admissible evidence that Defendant Brown's use of force was objectively unreasonable. Both Plaintiff and Defendant Brown agree that the event began when Plaintiff refused to close a gate as instructed by Defendant Brown, responding "Bitch, that's your job. I'm not closing no fucking gate." ECF No.

1 at 5; ECF No. 15-2 at ¶¶ 16, 19. Plaintiff added that he would not mind "smacking" Defendant Brown. ECF No. 15-2 at ¶ 23. Plaintiff threatened twice more that he would strike Defendant Brown, while Defendant Brown directed Plaintiff and the other inmates down the hallway back into the processing area. *Id.* at ¶¶ 25, 27. The third time Plaintiff made the threat, he stood a few feet from Defendant Brown, dropped his bag, and "squared up" with Defendant Brown. *Id.* at ¶ 29. Believing that Plaintiff intended to strike and perceiving Plaintiff to have raised his right arm to do so, Defendant Brown struck Plaintiff twice in the face with his fist, causing him to fall. *Id.* at ¶¶ 30-33. Defendant Brown then held Plaintiff down on the floor until two other responding officers handcuffed him. *Id.* at ¶ 35; ECF No. 15-3 at 1.

Based on the evidentiary record in Defendant Brown's affidavit, the force used by Defendant Brown was reasonable to protect his own safety and maintain order. "Corrections officers act in a 'good faith effort to maintain or restore discipline' – that is, with a permissible motive — not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." *Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019) (quoting *Hudson*, 503 U.S. at 6-7). Six to seven inmates were in the hallway walking towards Plaintiff and Defendant Brown, and those inmates were approximately ten to fifteen feet away when the incident occurred. ECF No. 15-2 at ¶ 34. Plaintiff, who was not handcuffed, failed to comply with Defendant Brown's previous orders, made verbal threats, and adjusted his physical stance; therefore, Defendant Brown perceived Plaintiff's actions to be a risk to his physical safety. Based on these circumstances and Plaintiff's arm movement, it was not unreasonable for Defendant Brown to believe that he was in immediate danger and to strike Plaintiff to protect himself and maintain order.

Defendant Brown's assertion that his use of force was not excessive is corroborated by the fact that Plaintiff sustained no significant injury. Plaintiff was "evaluated by N.P. Adeyiga and cleared for restrictive housing.". ECF No. 15-3 at 1; *see Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (quoting *Hudson*, 503 U.S. at 9)). Based on the foregoing, Defendant Brown has demonstrated that his use of force was reasonable, and summary judgment is warranted.

## Conclusion

Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, is granted. The Complaint is dismissed as to Defendants BCDC and Director Gail Watts. Summary judgment is granted in favor of Defendant Charles E. Brown, III.

A separate Order follows.

December 7, 2020                             /s/
Date                                        Stephanie A. Gallagher
                                            United States District Judge